UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TARA KELSHEIMER,

Plaintiff,

v.

PATHFINDER VANCOUVER HOLDINGS,

LLC, et al.,

Defendants.

Case No. 3:25-cv-05515-TMC

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS

## I.    INTRODUCTION

Plaintiff Tara Kelsheimer was previously a residential tenant at Creekside Village ("Creekside"), an apartment complex in Vancouver, Washington. In October 2023, Kelsheimer informed Creekside staff that she had experienced domestic violence at the complex and intended to relocate. She now alleges that Defendants—Creekside's owner Pathfinder Holdings, LLC ("Pathfinder"), Creekside's property management company Apartment Management Consultants, LLC ("AMC"), and AMC employees Lyndsey Lange and Nikki Turner—committed discriminatory and retaliatory conduct against her based on her sex and her experience as a domestic violence survivor. In relevant part, she claims that Defendants violated the Washington Law Against Discrimination ("WLAD") and the Washington Consumer

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 1

Protection Act ("CPA"), and that Pathfinder and AMC negligently supervised their employees and agents.

Defendants AMC, Lange, and Turner (collectively, the "Movant Defendants") seek dismissal of Kelsheimer's WLAD, CPA, and negligent supervision claims. Dkt. 17. As explained further below, the Court agrees that Kelsheimer has failed to state a claim for negligent supervision. However, her WLAD and CPA claims are sufficient to go forward at this stage. The Court therefore GRANTS the motion to dismiss as to Kelsheimer's negligent supervision claim and DENIES the motion as to her WLAD and CPA claims.

## II.     BACKGROUND

The Court accepts all factual allegations in Kelsheimer's amended complaint as true and draws all reasonable inferences in her favor.

### A.     Facts

In September 2023, while Kelsheimer lived at Creekside, an ex-partner engaged in violent and threatening behavior toward her at her home. Dkt. 9 ¶¶ 14–15. She obtained a protection order against the ex-partner, who violated the order within a week. *Id.* ¶¶ 16–17.

On October 5, 2023, Kelsheimer timely paid her October rent in full. *Id.* ¶ 18. She then informed a Creekside manager that she had experienced domestic violence and intended to exercise her rights under the Violence Against Women Act ("VAWA") to relocate out of Creekside. *Id.* ¶ 19; *see* 24 C.F.R. § 5.2005(e). She also provided Defendants with a copy of the protection order. Dkt. 9 ¶ 20. The next day, she initiated VAWA's emergency transfer process. *Id.* ¶ 21.

Between October 10 and November 14, 2023, Defendants sent Kelsheimer multiple eviction notices and claims of overdue payments. *Id.* ¶¶ 22–27. Kelsheimer alleges that her interactions with Defendants during this time "were marked by misinformation, illegal demands,

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 2

and refusal to acknowledge Ms. Kelsheimer's rights under VAWA." *Id.* ¶ 26; *see also id.* ¶ 28. Because of the eviction notices, Kelsheimer "was forced to vacate and temporarily reside with family, before she had obtained replacement housing." *Id.* ¶ 28.

**B.      Procedural history**

Kelsheimer initiated this action on June 12, 2025. Dkt. 1. On August 21, she filed an amended complaint. Dkt. 9. On October 27, the Movant Defendants moved to dismiss the WLAD, CPA, and negligent supervision claims in the amended complaint. Dkt. 17. Kelsheimer responded (Dkt. 20), and the Movant Defendants replied (Dkt. 22). The motion to dismiss is now ripe for the Court's review.

## III.    JURISDICTION

The Court has federal question jurisdiction over this matter because it arises under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3631. *See* 28 U.S.C. § 1331. The Court exercises supplemental jurisdiction over Kelsheimer's state-law claims. 28 U.S.C. § 1367(a); *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 31 (2025) ("The federal court has supplemental jurisdiction over state-law claims sharing a 'common nucleus of operative fact' with the federal-law ones." (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966))).

## IV.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted). To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 3

allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party," *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014), but need not "accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## V.    DISCUSSION

### A.    Kelsheimer has stated a claim for sex discrimination under the WLAD.

The parties dispute whether Kelsheimer's allegations about how Defendants responded to her experience of domestic violence can sustain a claim for sex discrimination under the WLAD. The WLAD expressly prohibits discrimination "because of" the following categories:

> sex, marital status, sexual orientation, race, creed, color, national origin, citizenship or immigration status, families with children status, honorably discharged veteran or military status, the presence of any sensory, mental, or physical disability, or the use of a trained dog guide or service animal by a person with a disability.

RCW 49.60.222(1); *see* Dkt. 17 at 4–6; Dkt. 20 at 4–8. Because WLAD does not enumerate "domestic violence survivor" as a protected status, the primary question before the Court is whether discrimination based on one's experience of domestic violence can constitute discrimination "because of sex." *See* Dkt. 20 at 4–6. The Movant Defendants challenge Kelsheimer's WLAD claim solely on this basis. Dkt. 17 at 4–6; Dkt. 22 at 2–5.

The Washington legislature has mandated that the WLAD be "construed liberally," RCW 49.60.020, and Washington courts thus "view with caution any construction that would narrow the coverage of the law." *State v. City of Sunnyside*, 3 Wn.3d 279, 316–17, 550 P.3d 31 (2024) (quoting *Marquis v. City of Spokane*, 130 Wn.2d 97, 108, 922 P.2d 43 (1996)). Moreover, "Washington courts have . . . recognized the necessity of construing the WLAD broadly to affect the legislative purpose of the WLAD: to eliminate and prevent discrimination in real estate transactions based on sex." *Tafoya v. State Hum. Rts. Comm'n*, 177 Wn. App. 216, 225, 311 P.3d 70 (2013), *as amended* (Nov. 13, 2013).

Washington courts have not considered the question of whether discrimination based on a person experiencing domestic violence can constitute sex discrimination under the WLAD. When faced with an unsettled question like this one, the Court "may look to the federal case law when a federal anti-discrimination law contains the same protections and mandates the same broad construction." *Id.* at 224. And where the WLAD differs from a corresponding federal law, it has typically been construed to afford "greater . . . protections than its federal counterparts." *City of Sunnyside*, 3 Wn.3d at 317 (quoting *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 491, 325 P.3d 193 (2014)). Because this matter concerns allegations of housing discrimination, the proper corollary is the FHA, which prohibits "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 5

42 U.S.C. § 3604(b); *see also Tafoya*, 177 Wn. App. at 224 (comparing the WLAD and the FHA).

Like the WLAD, the FHA does not enumerate domestic violence survivors as members of a protected group. But numerous federal courts interpreting the FHA have held "that claims alleging discrimination based on status as a victim of domestic violence are not *per se* invalid." *Wilson v. Guardian Mgmt., LLC*, 383 F. Supp. 3d 1105, 1109 (D. Or. 2019); *see, e.g.*, *Bouley v. Young-Sabourin*, 394 F. Supp. 2d 675, 678 (D. Vt. 2005) (concluding that a lease termination based on the tenant's status as a domestic violence survivor "could constitute unlawful discrimination under the Fair Housing Act"); *Creason v. Singh*, No. 13-CV-03731-JST, 2013 WL 6185596, at *4 (N.D. Cal. Nov. 26, 2013), *aff'd*, 650 F. App'x 462 (9th Cir. 2016) (noting that "[t]here is persuasive authority that, at least in some cases, evicting a tenant with a valid domestic violence defense could constitute discrimination on the basis of sex in violation of Section 3604" but not deciding the question definitively); *Butler v. Sundo Cap., LLC*, 559 F. Supp. 3d 452, 457–58 (W.D. Pa. 2021) (concluding that "domestic violence victims or survivors" were members of a protected class under the FHA and were "therefore not barred from bringing their disparate impact claim based on Defendants' allegedly discriminatory enforcement of their early termination and rent acceleration provisions"); *see also Antonelli v. Gloucester Cnty. Hous. Auth.*, No. CV 19-16962 (RBK/AMD), 2019 WL 5485449, at *7 (D.N.J. Oct. 25, 2019) ("[S]everal courts have found that a failure to comply with VAWA can permit an inference that a defendant acted with the intent to discriminate on the basis of sex in violation of the FHA."). These decisions align with a 2011 guidance memo from the Department of Housing and Urban Development, which "explains that discrimination against victims of domestic violence 'because of their history or the acts of their abusers' may be illegal under the FHA." *Wilson*, 383 F. Supp. 3d at 1109 (quoting United States Department of Housing and Urban

Development, *Assessing Claims of Housing Discrimination against Victims of Domestic Violence under the Fair Housing Act (FHA) and the Violence against Women Act (VAWA)*).

Other courts have reasoned that a landlord's awareness that a tenant had experienced domestic violence could be considered evidence of discriminatory intent. *See Meister v. Kansas City*, No. 09-2544-EFM, 2011 WL 765887, at *6 (D. Kan. Feb. 25, 2011); *Dickinson v. Zanesville Metro. Hous. Auth.*, 975 F. Supp. 2d 863, 872 (S.D. Ohio 2013). Finally, a minority of courts have ruled that evidence of discrimination based on domestic violence survivor status is not enough to support a sex discrimination claim. *See McVicker v. Muskogee Hous. Auth.*, No. 22-CV-108-JFH, 2024 WL 4416555, at *8 (E.D. Okla. Oct. 4, 2024); *Delgado v. Morris Cnty. Hous. Auth.*, No. CV1815092ESMAH, 2018 WL 5962478, at *5 (D.N.J. Nov. 13, 2018); *Barnett v. Pickering*, No. 09-CV-264-PB, 2010 WL 144359, at *2 (D.N.H. Jan. 8, 2010).

In short, while there is some disagreement among courts that have considered the question, the weight of authority suggests that discrimination based on one's experience as a domestic violence survivor can permit a finding of sex discrimination under the FHA. Given the Washington Supreme Court's directive to interpret the WLAD liberally and with at least the same protections as the FHA, the Court applies this same reasoning to Kelsheimer's WLAD claim. To use the language of the WLAD, evidence that a defendant discriminated against a tenant based on her experience of domestic violence can allow a factfinder to conclude that the tenant's sex was a "substantial factor" in the landlord's action. *See City of Sunnyside*, 3 Wn.3d at 316 ("[W]e have described the causation component of WLAD claims as a requirement that the plaintiff show the protected class was a 'substantial factor.'" (quoting *Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 310, 898 P.2d 284 (1995))).

Kelsheimer alleges that she informed Defendants that she had experienced domestic violence, provided them a copy of the protection order against her ex-partner, and expressed an

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 7

intent to exercise her rights under VAWA. Dkt. 9 ¶¶ 19–21. She claims that even though she had paid her October 2023 rent on time, Defendants then issued her multiple eviction notices and notices of overdue payments, all while "refus[ing] to accept her VAWA claims." *Id.* ¶¶ 18, 22–28. These allegations show that Defendants were aware of Kelsheimer's experience as a domestic violence survivor, and they draw a connection between that experience and Defendants' subsequent actions. Drawing all reasonable inferences in Kelsheimer's favor, *see Retail Prop. Tr.*, 768 F.3d at 945, the Court thus concludes that Kelsheimer has sufficiently stated a claim for sex discrimination under the WLAD.[1] The motion to dismiss is DENIED as to this claim.

**B.      Kelsheimer has successfully alleged a per se CPA violation based on the WLAD claim.**

There are five elements to a valid CPA claim: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). For the purposes of the CPA, a violation of the WLAD is "a matter affecting the public interest, is not reasonable in relation to the development and preservation of business, and is an unfair or deceptive act in trade or commerce"—in other words, the first three elements of a CPA claim. RCW 49.60.030(3).

Under RCW 49.60.030(3), "any unfair practice in a real estate transaction which is the basis for relief specified in the amendments to RCW 49.60.225 contained in chapter 69, Laws of

---

[1] Kelsheimer also argues that the allegations in the amended complaint are sufficient to state claim for relief under the Residential Landlord-Tenant Act ("RLTA"), RCW 59.18.580(2). Dkt. 20 at 9. Under RLTA, "[a] landlord may not terminate a tenancy . . . based on the tenant's or applicant's or a household member's status as a victim of domestic violence." It is unclear to the Court whether a damages action is available for this provision of RLTA, and this issue has not been sufficiently briefed by the parties. If Kelsheimer seeks to pursue this theory of relief, she must move for leave to amend. Fed. R. Civ. P. 15(a)(2).

1993," is excepted from the general rule that an unfair practice under the WLAD constitutes a per se CPA violation. In the reply brief, the Movant Defendants suggest that Kelsheimer's claims fall under this exception. Dkt. 22 at 5–6. But this exception operates to prevent a plaintiff who obtains the remedies enumerated in RCW 49.60.225—civil penalties imposed by the Washington State Human Rights Commission—from also establishing a per se CPA claim based on the same wrongful conduct. Instead of seeking relief before the Commission, Kelsheimer chose to file suit in federal court. This exception thus does not apply here.

Because Kelsheimer has successfully stated a claim under the WLAD, she has also stated a claim for a per se violation of the CPA. The motion to dismiss is DENIED as to this claim.

**C.      Kelsheimer fails to state a claim for negligent supervision.**

The Movant Defendants argue that Kelsheimer fails to state a negligent supervision claim because she does not allege any actions falling outside of the scope of any individual Defendant's employment. Dkt. 17 at 8; Dkt. 22 at 7. The Court agrees.

A negligent supervision claim is only actionable when an employee acted outside the scope of employment. *Anderson v. Soap Lake Sch. Dist.*, 191 Wn.2d 343, 361, 423 P.3d 197 (2018). "An employee is within the scope of employment if he or she is (1) engaged in the performance of duties required by his employment contract or specifically directed by the employer—i.e., fulfilling his or her job functions, or (2) engaged in the furtherance of the employer's interests." *Evans v. Tacoma Sch. Dist. No. 10*, 195 Wn. App. 25, 37, 380 P.3d 553, 559 (2016). By contrast, "[a]n employee's conduct will be outside the scope of employment if it 'is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the [employer].'" *Robel v. Roundup Corp.*, 148 Wn.2d 35, 53, 59 P.3d 611 (2002) (quoting RESTATEMENT (SECOND) OF AGENCY § 228(2) (1958)). "The

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 9

proper inquiry is whether the employee was fulfilling his or her job functions at the time he or she engaged in the injurious conduct." *Id.*

Kelsheimer argues, without citation to any authority, that "[g]enerally intentional acts that are illegal or criminal are considered outside the scope of employment." Dkt. 20 at 10–11. But Washington case law establishes that "intentional or criminal" acts may be within the scope of employment. *Robel*, 148 Wn.2d at 53 (concluding that prior Washington cases "simply do not stand for the proposition that intentional or criminal conduct is per se outside the scope of employment"); *Evans*, 195 Wn. App. at 39; *see also Niece v. Elmview Grp. Home*, 79 Wn. App. 660, 664, 904 P.2d 784 (1995), *aff'd*, 131 Wn.2d 39, 929 P.2d 420 (1997). Kelsheimer does not point to specific allegations of any Defendant employee acting beyond what was authorized or outside of "job functions," nor can the Court identify any such allegations in the amended complaint. The Court thus GRANTS the motion to dismiss as to this claim and DISMISSES the negligent supervision claim with prejudice.

## VI.    CONCLUSION

The motion to dismiss (Dkt. 17) is GRANTED IN PART and DENIED PART. Plaintiff's negligent supervision claim is DISMISSED with prejudice.

Dated this 7th day of May, 2026.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 10